UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARK SCHACK,

    Petitioner,

v.                      Case No: 2:16-cv-438-JES-MRM

FLORIDA ATTORNEY GENERAL and
SECRETARY, DOC,

    Respondents.

## OPINION AND ORDER

Before the Court is Mark Schack's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. #1). Schack challenges his 2009 conviction for Second Degree Murder, for which he received a life sentence.

### I. Background

In the early morning of May 17, 2008, Amy Boscarino was fatally shot in the house she shared with Schack by a rifle Schack was handling. Schack claimed he lost control of the rifle and did not intend to fire it. But on July 30, 2008, the State of Florida charged Schack with the killing. (Ex. #1, p. 14). Schack pled not guilty. (Id. at 17). He was represented by Assistant Public Defenders Katheryn Smith Calvo and Brett Gelman.

At trial, a neighbor testified he heard the gunshot "around 2:05, 2:15" a.m., but no later than 2:15. (Trial Transcript (Tr.),

pp. 360-61). Schack called 911 at 2:34 a.m. (Id. at 342). Boscarino was declared dead when paramedics arrived at 2:47 a.m. (Id. at 324). Police found the rifle on a bed in the master bedroom. (Tr. at 412). It had a live round in the chamber, but it was not loaded with a magazine. (Id. at 538).

Detective Michael Carr and Lieutenant Jeff Brown interviewed Schack at the Lee County Sheriff's Office. Schack told them Boscarino planned to practice with the gun later that morning, and they had set the gun on a dresser in their bedroom to try out different scopes for her to use. She then left the room and started cleaning the house. Schack claimed he pulled the magazine out, the gun slipped off the dresser, he grabbed it, and the gun fired. (Ex. #1 at 208).

The State contradicted much of Schack's story at trial. Boscarino had plans to meet her cousin for breakfast on May 17, 2008, then to see her friend's daughter's new apartment. (Tr. at 430, 452). Crime Scene Specialist Robert Walker estimated the trajectory of the bullet by analyzing Boscarino's wounds and a bullet hole in the wall. The entry wound was 51.5 inches from Boscarino's heel, and the bullet hole in the wall was almost 52 inches from the floor, suggesting a flat trajectory. (Id. at 598, 602). Walker opined that the gun was on a bipod atop the dresser

when the shot was fired. (Id. at 612-13). Walker also explained that the live round found in the chamber indicated there was a loaded magazine in the gun when the shot was fired. (Id. at 613). Police found four magazines compatible with the rifle in a gun safe in the bedroom closet. (Id. at 545). One of the magazines had blood on it. DNA testing matched blood found on the magazine, on the closet door, and on a comforter in the bedroom with a sample from Boscarino. (Id. at 855).

Several of Schack's acquaintances testified that he gave differing accounts of what he was doing when the shot was fired. Schack told a friend he was changing the scope. (Id. at 462). He told another friend he was working on the magazine. (Id. at 924). And he told Boscarino's father and a victim advocate he was cleaning the gun when it went off. (Id. at 776, 878-79).

The jury found Schack guilty of Second Degree Murder. (Ex. #1 at 266). Schack moved for a judgment of acquittal notwithstanding the verdict and for a new trial. (Id. at 276-78). The trial court denied both motions and sentenced Schack to life imprisonment. Special Assistant Public Defender Kimberly Nolen Hopkins represented Schack on appeal, arguing the State failed to present evidence sufficient to support a conviction for second degree murder. (Ex. #2). The Florida Second District Court of

Appeals (2nd DCA) affirmed without a written opinion. (Ex. #4). Schack then filed three state post-conviction motions, and all were denied.

Respondent concedes that Schack timely filed his Habeas Petition in this Court. In its response to the Petition, Respondent alerted Schack that he may have a remedy in state court based on <u>Wardlow v. State</u>, 212 So. 3d 1091 (Dist. Ct. App. Fla. 2017). At Schack's request, the Court stayed this case so he could exhaust this state law remedy. (Doc. #26). Schack filed another post-conviction petition in state court. The 2nd DCA denied the petition without a written opinion. (Doc. #41-2 at 213). The Court lifted the stay, and the parties completed briefing this case. Schack's Habeas Petition is now ripe.

**II. Applicable Habeas Law**

   **a. AEDPA**

The Antiterrorism Effective Death Penalty Act (AEDPA) governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of

4

> the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's violation of state law is not enough to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. White, 134 S. Ct. at 1702; Casey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application"

of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). "[T]his standard is difficult to meet because it was meant to be." Sexton v. Beaudreaux, 138 S. Ct. 2555, 2558 (2018).

Finally, when reviewing a claim under 28 U.S.C. § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the

federal habeas court would have reached a different conclusion in the first instance.").

### b. Exhaustion and Procedural Default

AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of relief available under state law. Failure to exhaust occurs "when a petitioner has not 'fairly presented' every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Pope v. Sec'y for Dep't. of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998).

Procedural defaults generally arise in two ways:

> (1) where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred; or (2) where the petitioner never raised the claim in state court, and it is obvious that the state court would hold it to be procedurally barred if it were raised now.

Cortes v. Gladish, 216 F. App'x 897, 899 (11th Cir. 2007). A federal habeas court may consider a procedurally barred claim if

(1) petitioner shows "adequate cause and actual prejudice," or (2) if "the failure to consider the claim would result in a fundamental miscarriage of justice." Id. (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991)). Another gateway through a procedural bar exists for claims of ineffective assistance of trial counsel. If the state court did not appoint counsel in the collateral proceeding, or if collateral-review counsel was ineffective, a petitioner may overcome procedural default by "demonstrat[ing] that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez v. Ryan, 566 U.S. 1, 13 (2012).

### c. Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person may have relief for ineffective assistance of counsel. 466 U.S. 668, 687-88 (1984). A petitioner must establish: (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. Id.

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance.'" Sealey v. Warden, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting Strickland, 466 U.S. at 689). And "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Franks v. GDCP Warden, 975 F.3d 1165, 1176 (11th Cir. 2020) (quoting Harrington, 562 U.S. at 101). Thus, a habeas petitioner must "show that no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." Id.

The second prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Sealey, 954 F.3d at 1355 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

"An ineffective-assistance claim can be decided on either the deficiency or prejudice prong." Id. And "[w]hile the Strickland standard is itself hard to meet, 'establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.'" Id. (quoting Harrington, 562 U.S. at 105). The critical question is not whether this Court can see a

9

substantial likelihood of a different result had defense counsel taken a different approach. Mays v. Hines, 141 S. Ct. 1145, 1149 (2021). All that matters is whether the state court, "notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." Id. (quoting Knowles v. Mirazayance, 556 U.S. 111, 123 (2009)).

**III. Analysis**

    **a. Ground 1: Appellate counsel failed to argue the trial court erroneously instructed the jury on manslaughter**

The trial court instructed the jury on the lesser included crime of manslaughter. At the time of trial, the standard jury instruction for manslaughter in Florida stated that the State must prove beyond a reasonable doubt that "(Defendant) intentionally caused the death of (victim)." Fla. Std. Jury Instr. (Crim.) 7.7 (2006). The Florida Supreme Court held in 2010 that this instruction misstated the requisite intent for manslaughter, and that giving it as a lesser included crime can constitute fundamental error. State v. Montgomery, 39 So. 3d 252 (Fla. 2010).[1]

---

[1] The Florida Supreme Court receded from its Montgomery decision in Knight v. State, 286 So. 3d 147 (Fla. 2019).

Schack argues Hopkins was ineffective as his appellate counsel because she did not address the manslaughter instruction on appeal. But such an argument would have been futile because the Court did not give the faulty standard instruction. The transcript of the charge conference shows that the parties submitted two alternative proposed manslaughter instructions to the Court. Schack's trial counsel requested the court give the faulty standard instruction, but the State alerted the court to the then-pending Montgomery case and recommended an alternative instruction. (Tr. at 861-63).

The trial court agreed with the State and gave the alternative instruction. It stated:

> To prove the crime of Manslaughter, the State must prove the following two elements beyond a reasonable doubt:
>
> 1. Amy Boscarino is dead.
>
> 2. Mark Alan Schack, committed an intentional act that caused the death of Amy Boscarino or the death of Amy Boscarino was caused by the culpable negligence of Mark Alan Schack.
>
> . . .
>
> In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had an intent to cause death, only an intent to commit an act which caused death.

(Ex. #1 at 252). This instruction was not erroneous. In fact, it lines up with an amendment to a standard jury instruction the

Florida Supreme Court later approved. See Montgomery, 39 So. 3d at 257. An argument objecting to the instruction would have been meritless. Hopkins thus acted reasonably when she chose not to raise it. The Court denies Ground 1.

> **b. Ground 2: The trial court erred in denying the motion for acquittal because the State failed to present sufficient evidence of guilt**

Schack next challenges the trial court's denial of his motion for acquittal because the evidence did not support a conviction. Respondent observes—and Schack concedes—that he made this argument on direct appeal but did not assert any constitutional violations. Schack thus failed to exhaust this ground in state court, and the Court is precluded from granting relief absent exceptional circumstances. See Pope, supra. Schack asks the Court to excuse his failure to exhaust Ground 2 because Hopkins' omission of a federal due process argument was ineffective assistance of counsel. See Williams v. Fla. Dep't of Corr., 391 F. App'x 806 (11th Cir. 2010).

Schack's argument on Ground 2 is conclusory and facially inadequate. The trial court denied Schack's motion for acquittal, and the 2nd DCA affirmed. Schack does not explain how that result might have been different had Hopkins couched her argument in due-process terms. Nor does Schack identify any particular element

of Second Degree Murder that the State failed to prove. Instead, he argues that some of the physical evidence supports his claim that the shooting was an accident, and he highlights some contradictions between the State's evidence and his testimony. But "the fact that the evidence is contradictory does not warrant a judgment of acquittal." Rios v. Sec'y, Dep't of Corr., 460 F. App'x 831, 833 (11th Cir. 2012) (quoting Fitzpatrick v. State, 900 So. 2d 495, 508 (Fla. 2005)).

The Court finds that Ground 2 is unexhausted, and even if the Court excused Schack's failure to exhaust, it lacks merit. Ground 2 is denied.

### c. Ground 3: Schack did not receive effective assistance of counsel at trial

Schack alleges four instances of ineffective assistance of counsel at trial. The Court denies all four sub-claims for the reasons stated below.

#### 1. Counsel failed to object to Walker's gun test testimony

Prior to trial, Calvo filed a Motion in Limine, seeking to exclude certain evidence, including a video in which police caused the gun to fall off the dresser repeatedly to see if it would dry fire. (Ex. #1 at 25). The prosecution stated it did not intend to play the video at trial but asked whether Crime Scene Specialist

13

Walker could testify about the test. (Tr. at 29). The trial court replied, "without the video I don't see a problem. And you'll make your appropriate objection at the time, I'm sure." (Id. at 30).

At trial, Walker testified that during his investigation he placed the rifle on Schack's dresser and pushed the rifle off the dresser eight to ten times. Each time, he caught the rifle but did not touch the trigger. The gun did not dry fire during these tests. (Id. at 572-73). Schack's trial counsel did not object to this portion of Walker's testimony. On cross-examination, Calvo highlighted that the gun was not loaded during the tests, no magazine was attached, Walker did not touch the trigger, and he remained in control of the gun. (Id. at 657-58).

The post-conviction court considered this issue and held:

> While the video was not allowed into evidence, the Court ruled that the State could still question Walker about his observation and the findings when he attempted to recreate the conditions surrounding the shooting. Defense counsel attempted to rebut the evidence on cross-examination of Walker. Therefore, once again, counsel could not have been ineffective for failing to object to a meritless issue.

(Doc. #41-2 at 139 (internal citations omitted)). Schack fails to demonstrate that the post-conviction court's ruling is unreasonable. Calvo's decision not to object to testimony the trial court already deemed admissible did not render her

14

representation deficient. Making the jury aware of the differences between Walker's tests and Schack's description of the shooting was a reasonable strategy.

### 2. Counsel failed to retain gun expert

Schack argues his trial counsel should have hired a gun expert to rebut Walker's testimony but lacked the resources to do so. Schack speculates that an unnamed expert could have recreated his account of the shooting and would have opined that the bullet-trajectory evidence supported his claim. The post-conviction court rejected Schack's argument:

> Defendant alleges and speculates that if this unspecified firearm expert testified, he would have reached a different conclusion than Walker. Yet Defendant presents no evidence that supports this allegation. Furthermore, defense counsel was able to show the weakness in Walker's testimony through cross-examination.

(Doc. #41-2 at 139-40 (internal citations omitted)).

Schack fails to show that the post-conviction court's decision was contrary to federal law. In fact, Eleventh Circuit precedent supports the state court's ruling. When "a petitioner raises an ineffective assistance claim based on counsel's failure to call a witness, the petitioner carries a heavy burden 'because often allegations of what a witness would have testified to are largely speculative.'" Finch v. Sec'y, Dep't of Corr., 643 F.

App'x 848, 852 (11th Cir. 2016) (quoting Sullivan v. DeLoach, 459 F.3d 1097, 1108-09 (11th Cir. 2006)). The post-conviction court properly denied Schack's claim because "ineffective assistance of counsel cannot be proven via conclusory assertion." Wilson v. Sec'y, Dep't of Corr., 769 F. App'x 825, 827 (11th Cir. 2019).

### 3. Counsel failed to object to the jury instruction for Second Degree Murder

Scheck next argues that his trial counsel should have objected to the Second Degree Murder jury instruction. To support this argument, Schack presents a single line from the instruction out of context. He claims the jury was instructed that "The death was caused by the criminal act of Mark Alan Schack." (Doc. #1-1 at 5). Reading that line in the context of the instruction shows that Shack's argument is frivolous:

> To prove the crime of Second Degree Murder, the State must prove the following three elements beyond a reasonable doubt:
>
> 1. Amy Boscarino is dead.
>
> 2. The death was caused by the criminal act of Mark Alan Schack.
>
> 3. There was an unlawful killing of Amy Boscarino by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life.

(Ex. #1 at 248).

The post-conviction court properly rejected Shack's argument:

"The standard jury instruction for second degree murder was read in this case, as well as the instruction for excusable homicide. Therefore, counsel could not have been ineffective for failing to object to the standard jury instruction which was not invalidated at the time of Defendant's sentencing." (Doc. #42-1 at 140 (internal citation omitted)).

### 4. Counsel failed to object to motion in limine violation

At trial, a State's witness described Scheck's appearance a couple days after the shooting as, "Rough. Very – I think even withdrawal from drugs." (Tr. at 1075). Calvo interrupted the witness, and the parties had a bench conference with the trial court. The court excused the jury and instructed the witness not to mention Schack's drug use. (Id. at 1077-83). Later, during Schack's cross-examination, the prosecutor asked him if he took Vicodin for pain, and Schack replied that he did. (Id. at 1301). The prosecutor mentioned the Vicodin use during closing argument. (Id. at 1365).

Schack claims (1) the State violated the trial court's order on a motion in limine, and (2) his counsel failed to object. Both claims are refuted by the record. The trial court did rule on the admissibility of Schack's drug use at the motion-in-limine hearing, except that it ordered the State to digitally remove drug

17

paraphernalia from a photograph of his bedroom. (Id. at 33-34). Thus, the State did not violate an in limine order. Even so, when a witness implied that Schack abused drugs, his counsel immediately objected, and the Court instructed the witness—outside the presence of the jury—to refrain from mentioning drug use. As for Schack's Vicodin use, there was no meritorious objection to raise. Schack took Vicodin to treat a medical issue that caused him to occasionally lose feeling in his hands. Schack presented this medical condition to help explain why he lost control of the gun. Because the record conclusively refutes this sub-claim, the post-conviction court correctly denied it.

### d. Ground 4: Trial counsel was ineffective for failing to suppress statements Schack made to police

Finally, Schack argues his trial counsel should have suppressed statements he made to police after invoking his right to an attorney. Schack concedes this claim is unexhausted and procedurally defaulted but asks the Court to review it under Martinez. Martinez allows a federal court to excuse a procedural default for "cause" if a habeas petitioner satisfies four elements:

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and

(4) state law *requires* that an "ineffective assistance of trial counsel claim be raised in an initial-review collateral proceeding.

Travino v. Thaler, 569 U.S. 413, 423 (2013) (quoting Martinez, 132 S. Ct. at 1318-19, 1320-21).

Schack makes no attempt to establish any of the Martinez elements, and the record shows that this claim is not substantial. Schack does not claim he was prejudiced by any statements in the interview. In fact, the interview was an important part of his defense—in closing arguments, his attorney called it "[t]he most accurate, complete story" of what happened the night of the shooting. (Tr. at 1404). Ground 4 is denied.

**IV. Certificate of Appealability**

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or

that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (citations omitted). Schack has not made the requisite showing here and may not have a certificate of appealability on any ground of his Petition.

Accordingly, it is

**ORDERED:**

1. Mark Schack's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person is State Custody (Doc. #1) is **DENIED**.

2. The Clerk shall enter judgment, terminate all motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on June 8th, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record

20